MARY D. CLARK, RESPONDENT, *v.* WILLIAM R. POST AND OTHERS, AS EXECUTORS, ETC., OF JAMES R. HUNTTING, DECEASED, APPELLANTS.

*Representations of an assignee in bankruptcy as to the validity of his title to real estate sold by him — agreement to refund the purchase-money — when not affected by the statute of frauds.*

The defendants' testator, James R. Huntting, having been, on July 3, 1877, appointed the assignee in bankruptcy of the firm of William Buck & Son, commenced an action against William Buck and his wife to set aside as fraudulent a deed conveying certain real estate to Buck's wife, which was then in her possession. On February 25, 1878, to aid in a composition which had been proposed by the bankrupt to his creditors, the wife conveyed the real estate to the assignee by a deed, reciting the consideration of one dollar, upon

an agreement between Mrs. Buck and the assignee that the deed should be void if the composition was not carried out. The composition was never carried out.

Thereafter, and on July 13, 1878, the assignee advertised and offered the property for sale at public auction, at which the plaintiff purchased the premises, relying upon the statement publicly made by the assignee's agent that the assignee had a valid and perfect title to the premises and could and would convey the same to the purchaser, especially as against the claims of Mrs. Buck and the bankrupt, and thereafter the plaintiff paid the amount of her bid upon the further assurance of the assignee that he would indemnify and protect her against Mrs. Buck's claims, and would hold her money until Mrs. Buck's claims were decided, and would refund it if it turned out that he had no title.

Thereafter Mrs. Buck brought an action against the assignee, the plaintiff and others, to set aside the deed because of a failure of consideration, in which the assignee pleaded that her title was fraudulent. Mrs. Buck having recovered a judgment establishing her title to the property, and directing that the plaintiff and her husband should reconvey it to her, they did so, and thereafter the plaintiff brought this action against the defendants to recover the money so paid to the assignee, their testator, who died during the pendency of the action brought by Mrs. Buck.

*Held,* that the plaintiff was entitled to recover.

That the agreement of the assignee was a new and independent one, unaffected by the doctrine of merger or the statute of frauds.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury at the Kings County Circuit, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

*Hamilton Wallace,* for the appellants.

*Coles Morris* and *Jesse Johnson,* for the respondent.

PRATT, J.:

The plaintiff recovered a verdict for $3,500 and interest, amounting in all to $5,238.63, upon facts substantially as follows: William Buck & Son, formerly of Sag Harbor, became insolvent in July, 1877. James R. Huntting, deceased, defendants' testator, was appointed their assignee in bankruptcy July 3, 1877. The wife of William Buck was then in possession of certain real estate at Sag Harbor, and the assignee in bankruptcy commenced suit against Mrs. Buck and the bankrupt to set aside the deed under which she claimed title. While that suit was pending, the bankrupt proposed a composition to their creditors of fifty cents on the dollar, and

Mrs. Buck, in order to aid them, offered to convey this piece of real estate to the assignee. This was done February 25, 1878. The conveyance recited the consideration of one dollar. It was made before the meeting of creditors, which was held two days later, February 27, 1878. There was an agreement between Mrs. Buck and the assignee that this deed should be void if the composition was not carried out. The proposed composition was accepted by the creditors, with some slight modifications, but on the express condition that it should be completed by the bankrupt within thirty days from March 13, 1878. The composition was approved by the bankrupt court, but it fell through and was never carried out. Notwithstanding these facts, the assignee advertised and offered the property for sale at public auction, July 13, 1878. It was alleged by plaintiff, but denied by defendant, that the assignee, through his agent, publicly declared at this sale that the assignee had valid and perfect title to the premises, and could and would convey the same to the purchaser, especially as against the claims of Mrs. Buck and the bankrupt. Plaintiff alleges that she, through her husband as her agent, relying on this representation, bid off the property for $3,500. She paid $875 down, and she alleges that subsequently, upon further assurance from the assignee that he would indemnify and protect her against Mr. Bucks' claims, she paid the balance, received the assignee's deed, which was without covenant for title or warranty, and entered into possession. This representation and the plaintiff's reliance thereon, as well as the agreement to indemnify, etc, were denied.

There certainly was evidence tending to sustain the plaintiff's allegations on both these points, and the jury has found in plaintiff's favor on each of them by special and general verdict. We must, therefore, assume that plaintiff's contention was the truth of the case, and pass on to determine the resulting rights.

After the purchase by and conveyance to plaintiff, the assignee procured an order vacating the order by which the composition had been confirmed. This was done by the bankrupt court, October 27, 1878. Subsequently, and about February 21, 1880, Mrs. Buck sued the assignee, the plaintiff and others in the Circuit Court to set aside both these deeds on the theory of total failure of consideration as between herself and the assignee, and that plaintiff had

taken her deed with notice of the foregoing equities. The assignee died while that suit was pending, and the defendants were made parties, in his stead, as his executors. The assignee plead, as an answer, that Mrs. Buck's original title was fraudulent as against him, and thus raised the same question which had been presented by his original suit to set aside her deed. This second suit was tried and resulted in a decree, June 28, 1883, adjudging Mrs. Buck's title valid at the time of her conveyance to the assignee; that there was a failure of consideration for that convevance and that he was bound to reconvey to her, indeed that that conveyance was null and void; also that the assignee's conveyance to this plaintiff was null and void, and that she and her husband should reconvey to Mr. Buck; and so the plaintiff was compelled to, and did surrender, and was deprived of all benefit of her purchase from, or for her money paid to the assignee.

Assuming the correctness of the finding of the jury, the plaintiff relied on an express represensation made by the assignee to the effect that he had good and valid title to the premises and a valid right to sell and convey them, and she paid him her money in reliance upon the truth of that representation, which turns out to have been totally untrue. She, therefore, paid him her money and got nothing for it. Justice naturally demands that she should recover it unless there is some legal impediment. The case shows that a second question was submitted to the jury, whether or not after the auction sale and in order to induce plaintiff to carry out that purchase, the assignee agreed that he would hold her money for the benefit of the parties entitled thereto, until Mrs. Buck's claims were decided, and would refund that money if it turned out that he had no title. The evidence justified the submission of that question to the jury and they decided it in plaintiff's favor.

It is thus apparent that, so far as the intention of the parties extended, the real transaction between plaintiff and the assignee was far from a complete and unqualified sale. Testing it by the intention of the parties, the assignee did not equitably and fairly acquire the absolute ownership of or even to use her money, but was bound to hold it as a sort of trust fund until the controvery with Mrs. Buck was determined. In other words, the transaction between the assignee and plaintiff seems to have been this: She

had made a contract to purchase a piece of property at a judicial sale which the court would not have compelled her to take, and she was then entitled to the restoration of her $875 paid on the bid ; and in view of this difficulty, the assignee said " take my deed without covenant for title, and, as against this claim by Mrs. Buck, I will hold this money, not as my money, absolutely, but *in trust* and as your security against this contention." The recitals in the deed to plaintiff, taken with the findings of the jury, very clearly and distinctly put the foregoing as the substance of this bargain.

The defendants' sole answer is, therefore, reduced to the proposition that this agreement was all merged in the assignee's deed, and that no obligations can survive which is not evinced by the writings. In other words, their plea is the statute of frauds. But, it is a well-settled rule that the statute of frauds shall never be held as an instrument of fraud and oppression, and it seems to me that to apply the statute rigorously to this case would be to do both those things. These parties were dealing on the basis that the assignee held a valid title. The plaintiff meant to take no chances respecting the title. If she obtained no title she was to have her money back again. The assignee meant that she should take no chances, unless he meant to cheat her, he intended to give her money back to her if he gave her no title. He took the money upon the express understanding that it was not absolutely his property, and would not be *until* the question of title was settled. Until that point was determined the assignee was the mere custodian of her money, her trustee of the money, having a purely contingent interest in it. Suppose, for the purpose of illustration, that plaintiff's money had been deposited in the hands of some third person or trust company to be paid to the assignee if the title was held good, and to be paid back to her if it was held bad. Could there be any doubt that she would have been entitled to it on the facts here established ? I think not. There was no trust in the land. They did nothing with the land. The deed did not reach the land. The trust related to *the money*. The statute forbids no such trust as that. Here was a clear agreement for a trust of the money and it was paid over for that purpose.

There is still another view ; that here was a *mutual mistake* of fact between these parties. Both assumed title in the assignee when

the fact was that he had no title at all. His muniments of title were void. They were deceptive. Grant that he acted in good faith, as plaintiff undoubtedly did; the result shows a mutual mistake about the very existence of the *subject* of the contract, *i. e.,* the title to the land.

I think the plaintiff's proposition that the agreement, though by parol, was collateral to the writing and was not within the statute, is sound.

I have carefully examined the exceptions taken during the trial and find none which are not covered by the points already discussed.

The disposition of the question of costs was undoubtedly correct. The papers show that, although notice to creditors had been published, the plaintiff's claim had been presented to the executors and they refused to refer it before this suit was commenced. The defendants can take nothing by the fact that there was no notice to creditors. Their refusal to refer obviated that difficulty. Under these circumstances the question of the reasonableness or unreasonableness of the defense has nothing to do with the case. There was a special application and order by the judge who tried the case that costs should be charged against defendants, as executors, payable only out of the assets in their hands.

Judgment should be affirmed, with costs of this appeal to the plaintiff.

DYKMAN, J.:

This action was brought for the recovery of the purchase-money paid by the plaintiff to James R. Huntting, the testator of the defendants, for real property conveyed to the plaintiff by such testator as assignee in the bankruptcy. The title subsequently failed and the plaintiff was compelled to surrender the property.

The trial judge charged the jury, among other things, in this language: "If you find that Mr. Clark acting as the agent of his wife, the plaintiff, had an interview with Mr. Huntting and at that interview with Mr. Huntting in the first place refused to take the deed; that after such refusal Mr. Huntting in order to induce him to take the deed promised to protect his wife, the purchaser of the property, and, further, if he would take the deed, to hold the purchase-money for the benefit of the parties who should eventually

prove to be entitled to it until the claims against the property of Mrs. Buck were finally decided, and if they were finally decided against him, Huntting, that he would refund the money to Mr. Clark for his wife; in that event the plaintiff in this action would be entitled to a verdict, and if she is entitled to any verdict, I understand that there is no dispute about the amount, which would be $3,500, with interest from July 31, 1878." * * * " I have prepared two questions to be specially submitted to you. They are in writing and you will answer them separately in writing, apart from your general verdict, although it is not necessary that you should sign your answers. The first question is : On the opening of the sale of the real estate in question at Sag Harbor, New York, on or about July 13, 1878, upon offering said real estate for sale, did the agent of James R. Huntting (who is represented to have been Mr. Carpenter), the assignee, in his presence state that said Huntting as said assignee, had a good title to said real estate, and could and would give a good title to the purchaser thereof, as against the bankrupts, William Buck, and William Buck, Jr., and Sybil T. Buck; was that so substantially; do you draw that inference from the facts that you find occurred there? Secondly: Subsequently, and before accepting the deed, did Stephen Clark, acting as the agent of the plaintiff, have an interview with the said James R. Huntting in which the said Huntting in order to induce Clark to accept such deed in his wife's behalf, promise to said Clark to protect the plaintiff, and if said deed was accepted, to hold the purchase-money for the benefit of the parties who should be entitled to it until the claim of Mrs. Buck against the property was decided, and to refund said purchase-money in case he, the said Huntting, proved to have any title? Gentlemen of the jury, I instruct you that you can render no verdict for the plaintiff unless you answer " yes " to the second question, but I want you to answer both questions." The jury found a verdict in favor of the plaintiff for the full amount claimed, with interest, and it must now be assumed that the questions laid before the jury were both solved in her favor. Such being the assumption, the finding is fully sustained by the testimony upon which the jury might well rely.

We have concluded to hold valid the contract so substantiated by the finding. Our conclusion is that the plaintiff possessed the right

when she was ready to accept the deed and pay the money to exact a contract, as a condition of the fulfillment and performance of her contract from the defendant's testator, that he would hold the purchase-money, and repay the same to her if it finally appeared that her title was a failure. Such an agreement was a new and independent one unaffected by the doctrine of merger or the statute of frauds. We think, however, the award of costs against the defend- ants as executors was err oneous. (*Johnson* v. *Myers*, 103 N. Y. 666.)

The judgment and order denying a motion for a new trial should be affirmed, with costs. The order awarding costs to the plaintiff should be reversed, with ten dollars costs and disbursements.

Judgment and order denying new trial affirmed, with costs